# EXHIBIT A

## NORTON, WASSERMAN, JONES & KELLY L.L.C.

FRANK C. NORTON
1930-2019

KENNETH W. WASSERMAN *

ROBERT S. JONES**

NORMAN R. KELLY

ROBERT A. MARTIN

BRENDAN J. BURKE***

CADEN L. BUTLER****

CARLY M. GRIT

MAILING ADDRESS:
P.O. Box 2388
Salina, KS 67402-2388

LAW OFFICES AT:
213 S. Santa Fe
Salina, KS 67401

Telephone 785-827-3646
Fax 785-827-0538

E-mail: nrk@nwjklaw.com

Attorneys at Law

*Admitted in Kansas and Nebraska
**Fellow American Academy of Matrimonial Lawyers
***Admitted in Kansas and Missouri
****Admitted in Kansas and Oklahoma

August 26, 2020

**Via E-mail and Fax**
customer.service@rsli.com
(267) 256-3532

Reliance Standard Life Insurance Company
2001 Market Street, Suite 1500
Philadelphia, Pennsylvania 19103

      RE:    *Gerald Shaft v. Reliance Standard Insurance Company*, Saline County District
             Court Case No. SA-2020-CV-000139-CO

To Whom It May Concern:

    Please find enclosed a copy of the Petition, Motion, Order and Summons that was filed in
the above entitled action.

                  Very truly yours,

                  Norman R. Kelly

NRK/llr
#9233.001
Enclosure(s)

ELECTRONICALLY FILED
2020 Aug 03 PM 4:22
CLERK OF THE SALINE COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000139-CO

## IN THE DISTRICT COURT OF SALINE COUNTY, KANSAS

| | |
|---|---|
| **GERALD SHAFT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.  SA-2020-CV-** |
| | ) |
| **RELIANCE STANDARD LIFE INS. CO.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## <u>PETITION</u>

COMES NOW Plaintiff Gerald Shaft (herein "Plaintiff") by and through counsel, Norman R. Kelly, Esq. of Norton, Wasserman, Jones & Kelly, L.L.C. and for his claims against Defendant Reliance Standard Life Insurance Company (herein "Defendant") states and alleges as follows:

### <u>Jurisdiction and Venue</u>

1.      This is a case brought under the Employee Retirement Income Security Act of 1974 ("ERISA); and in particular 29 U.S.C.A. §1132(e)(1), 1132(f).

2.      The ERISA statute provides at 29 U.S.C.A. §1133 a mechanism for administrative or internal appeal of benefit denials.  These avenues of appeal have been exhausted prior to the commencement of this legal action.

3.      Venue is proper with this Court pursuant to K.S.A. 60-624 as the cause of action arose in this county.

**Involved Parties**

4.    At all times mentioned, Plaintiff was and now is a residence of Salina, Saline County, Kansas, and the husband of the named insured, Diana Shaft (herein "Insured").

5.    At all times mentioned, Defendant was and now is a Limited Liability Company organized and existing under the laws of Texas, and authorized to engage in general insurance business and engaged in that business in Kansas.  Defendant may be served with a summons and copy of this complaint by serving its registered agent National Registered Agents, Inc. of Kansas at 112 SW 7th Street, Ste. 3C, Topeka, Kansas 66603.

6.    Insured was, until her death on October 24, 2018, the wife of Plaintiff.

7.    At all times mentioned, USD 305 Salina had a "Employee Welfare Benefit Plan" as defined by 29 U.S.C.A. §1002(1); and incident to her employment, Insured received coverage under the plan as a "participant" as defined by 29 U.S.C.A. §1002 (7).  This claim relates to benefits under the plan.

**Factual Allegations**

8.    On September 1, 2017, Defendant had in effect with USD 305 Salina a policy of group life insurance, insuring the life of Insured for $200,000.00, and it issued Certificate No. 10658738 showing such insurance under the group policy and the amount of it.  A copy of the certificate is attached as Exhibit "A", and incorporated by reference herein.

9.    Plaintiff is now and was on the date of death of Insured the designated beneficiary

2

in the insurance certificate for the applicable group life insurance policy.

10.     After the issuance of the policy by Defendant to Insured, the Insured kept and performed the conditions of it by the payment of the specified premiums, and that the policy of insurance was in full force and effect on the date of the maturity of it by the death of Insured.

11.     Prior to August of 2017, the Insured was employed as a social worker for the local school district, USD 305, located in Salina, Kansas.

12.     The insured attempted to return to work in August of 2017 but was physically unable to do so.  The insured was subsequently diagnosed with amyotrophic lateral sclerosis (ALS).

13.     The Insured's last active day at work for USD 305 was May 24, 2017, although she did not know that this would be her last active day at work until her ALS diagnosis three months later.

14.     The Insured was no longer physically present and working for USD 305 when the school district plan administrator held its annual meeting with employees in September of 2017 to discuss and renew benefits.

15.     The Insured's ALS was very aggressive and caused her death on October 24, 2018 just over a year after her diagnosis of ALS.

16.     Exhibit "A" provides that if an insured is not actively at work due to total disability, the Insured is eligible for Waiver of Premium and this benefit may be extended without payment of the required premium.

17.     According to Exhibit "A", there must be written notice of a claim after a loss, and

3

that the available benefits to the Insured or his or her designated beneficiary will not be reduced or denied if the proof is given "as soon as reasonably possible."

18.  After the Insured's diagnosis of ALS, the Plaintiff continued to work to support his family while also taking care of the Insured.

19.  The Plaintiff did not work for the involved school district, USD 305, and was not familiar with the group life insurance provided to USD 305's employees.  He did not have a copy of the life insurance policy nor did he receive any correspondence prior to the Insured's death from Bay Bridge Administration regarding an Application for the Waiver of Premium.

20.  Shortly after the Insured's passing, the Plaintiff began working on matters of her estate and became aware of the need to submit the Application for Waiver of Premium.

21.  Less than two weeks after Insured's passing and just days after learning of the required application, the Plaintiff submitted the Application for Waiver of Premium, which Bay Bridge Administrators received on November 5, 2018.

22.  On December 5, 2018, Bay Bridge Administrators sent a letter to Plaintiff, denying the Application for Waiver of Premium.

23.  On January 18, 2019, Plaintiff appealed the determination by the Defendant denying the Application for Waiver of Premium.  The basis of the Plaintiff's appeal was that the application was provided as soon as reasonably possibly.

24.  On February 14, 2019, Defendant again denied the Application for Waiver of Premium on appeal, closed the administrative record and determined that all

4

administrative remedies had been exhausted.

## Cause of Action

25.    The allegations contained in paragraph one (1) through twenty-five (25) above are incorporated above herein by reference as though fully set forth.

26.    The Plaintiff seeks the recovery of plan benefits pursuant to 29 U.S.C.A. § 1132(a)(1)(B).

27.    Under the terms of the plan, the Defendant agreed to provide Plaintiff with benefits should he provide proof of loss as soon as reasonably possible.  The Plaintiff provided the proof of loss to Defendant as soon as was reasonably possible and Defendant thereafter failed to provide such benefits.

28.    The denial of benefits to Plaintiff constitutes a breach of the plan between Defendant and Plaintiff.  Plaintiff seeks reimbursement and compensation for any and all benefits he would have received as a result of the Defendant's failure to provide coverage.

29.    Defendant has arbitrarily and capriciously breached the obligations set forth in the plan.  Defendant has arbitrarily and capriciously breached its obligations under the ERISA policy to provide Plaintiff benefits even though Plaintiff's benefits are covered under the terms of the plan.

30.    As a direct and proximate result of the conduct of Defendant in failing to provide coverage and pay benefits due and owing to Plaintiff, the Plaintiff has been damaged the amount equal to the amount of benefits to which Plaintiff would have been

entitled under the terms of the plan.

31.   As a direct and proximate result of the conduct of Defendant in failing to provide coverage and benefits under the plan, Plaintiff has suffered, and will continue to suffer in the future, damages under the plan put interest and other economically and consequential damages, for a total amount to be determined at the time of trial.

32.   The Plaintiff is entitled to benefits under the terms of the plan, including a judgment for the policy limits of two hundred thousand dollars ($200,000.00) and interest on the same at the maximum rate allowed by law from the earliest date possible.

33.   The Plaintiff is entitled to his reasonable attorney's fees incurred in obtaining this recovery pursuant to 29 U.S.C.A. § 1132(g)(1)

WHEREFORE, Plaintiff prays that this court grant the following relief against the Defendants and:

(a)   Enter judgment in Plaintiff's favor and against the Defendant and order the Defendant to pay Plaintiff's life insurance benefits under a waiver of premium to which he is entitled;

(b)   Adjudge and decree that Defendant failed to comply with minimum requirements of ERISA and other federal and state laws in connection with the denial of benefits;

(c)   Order Defendant, for benefits payable under the plan, to immediately pay to Plaintiff payments that Plaintiff has been entitled to receive;

(d)   Order Defendant to pay any future benefits payable under the plan Plaintiff is entitled to receive including judgment for the policy limits of two hundred thousand dollars

($200,000.00);

(e)   Grant Plaintiff judgment for interest at the maximum rate allowed by law from the earliest date possible on the benefits due under the plan;

(f)   Grant Plaintiff his reasonable attorney fees and costs incurred herein;

(g)   Grant such other and further relief as the court may deem, fair, just and equitable.

WHEREFORE, Plaintiff requests the above described relief to be granted to him including a judgment against Defendant for damages in an amount of two hundred thousand dollars ($200,000.00) for judgment for interest at the maximum rate allowed by law from the earliest date possible on the benefits due and owing to Plaintiff; for judgment for Plaintiff's attorney's fees and costs; and for such other and further relief as the court deems fair, just and equitable.

SUBMITTED BY:

NORTON, WASSERMAN, JONES & KELLY, L.L.C.
213 S. Santa Fe
PO Box 2388
Salina, Kansas 67401-2388
(785) 827-3646
Fax: (785) 827-0538
E-mail: nrk@nwjklaw.com

By: /s/Norman R. Kelly
Norman R. Kelly
SC # 10639
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff who demands trial by jury on his claims herein.

       NORTON, WASSERMAN, JONES & KELLY, L.L.C.
       213 S. Santa Fe
       PO Box 2388
       Salina, Kansas 67401-2388
       (785) 827-3646
       Fax: (785) 827-0538
       E-mail: nrk@nwjklaw.com


       By: /s/Norman R. Kelly
       Norman R. Kelly
       SC # 10639
       Attorneys for Plaintiff

ELECTRONICALLY FILED
2020 Aug 03 PM 4:22
CLERK OF THE SALINE COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000139-CO

# RELIANCE STANDARD

## LIFE INSURANCE COMPANY

Home Office: Schaumburg, Illinois • Administrative Office: Philadelphia, Pennsylvania

## PERSONAL COVERAGE INFORMATION FOR
## VOLUNTARY LIFE INSURANCE

**CERTIFICATE NUMBER:** 10658738        **EFFECTIVE DATE:** 09/01/2017

**GROUP:** VG600997 USD 305 SALINA

**NAMED INSURED:** DIANA SHAFT                      XXX-XX-0110
2007 RAYMOND

SALINA, KS   67401

**Voluntary Life Insurance Benefits:**                 Monthly Prem: $120.00

Employee:  $200,000

Spouse:        $0

Child:           $0

Administered by:        Bay Bridge Administrators L.L.C.
PO Box 161690
Austin TX 78716
1-800-845-7519

**Exhibit "A"**

# ▌RELIANCE STANDARD
## ▌LIFE INSURANCE COMPANY

Home Office: Schaumburg, Illinois • Administrative Office: Philadelphia, Pennsylvania

Group Policy No. VG 600901 ("the policy"), has been issued to the Austin Trust Company, Trustee for the National Educators Assurance Trust which we will refer to as "the Contract Holder". We will refer to Reliance Standard Life Insurance Company as "we", "us", or "our".

The policy was delivered in Texas and will be governed by the laws thereof.

This Certificate of Insurance is evidence of the Insured's insurance under the policy and of its benefits. Everything contained in this Certificate of Insurance is subject to the provisions, definitions, and exceptions in the policy. The policy is on file with the Contract Holder and may be examined at any reasonable time. Only one of our executive officers can authorize a change to the policy.

This Certificate of Insurance replaces all Certificates and Certificate Riders, if any, previously issued to the Insured under the policy.

The President and Secretary of Reliance Standard Life Insurance Company witness this Certificate:

_Secretary_

_President_

**GROUP TERM LIFE INSURANCE CERTIFICATE**
**NONPARTICIPATING**

LRS-9389-0107

**TABLE OF CONTENTS**

Policy Schedule                                        Page 3

Policy Termination Dates                               Page 6

General Definitions                                    Page 7

Voluntary Life Insurance                               Page 8

Family Life Insurance                                  Page 10

Exception to When Coverage Terminates                  Page 12

Conversion                                             Page 14

Claim Provisions                                       Page 16

General Provisions                                     Page 17

LRS-9389-0107                          2

**POLICY SCHEDULE**

| | |
|---|---|
| **CONTRACT HOLDER:** | Austin Trust Company, Trustee for the National Educators Assurance Trust |
| **PARTICIPATING EMPLOYER:** | USD 305 SALINA<br>District Identifier Number: VG600997 |
| **POLICY EFFECTIVE DATE:** | **September 1, 2007** |
| **PARTICIPATING EMPLOYER EFFECTIVE DATE:** | 04/01/2017 |
| **SCHEDULE REVISION DATE:** | September 1, 2017 |
| **Eligibility:** | All Actively at Work, full-time, permanent employees of the Participating Employer working 17.5 hours per week. |

**When Individual Coverage is Effective:** An employee's Voluntary Life Insurance benefit that is less than or equal to the Guaranteed Issue Amount begins on the latest of the following:

1. the Participating Employer's Effective Date, if the employee is a member of an Eligible Class and applies for insurance prior to such date;

2. the first day of the month following the date the employee applies for insurance, if such date is within 31 days of his or her eligibility date;

3. the first day of the month following the date we approve the employee's Evidence of Insurability, if application is made more than 31 days after his or her eligibility date.

Any Voluntary Life Insurance benefit that is in excess of the Guaranteed Issue Amount will become effective on the first day of the month following the date we approve the Evidence of Insurability.

If the employee is not Actively at Work due to an Injury or Sickness on the date his or her insurance would otherwise become effective, insurance will not be effective until the first full day following the day the employee returns to Active Work.

If the Insured is confined for medical care or treatment in an institution or at home on the date his or her insurance would otherwise become effective, insurance will not become effective until the first full day following the day he or she is given final medical discharge from such confinement.

No Voluntary Life Insurance benefit will be effective until the required premium is paid.

**When an Increase or Decrease in Individual Coverage is Effective:** Any increase in the amount of an employee's Voluntary Life Insurance benefit will take effect on the latest of the following:

1. the date of such increase, if the employee is Actively at Work on such date;

2. if the employee was not Actively at Work on the date the increase would otherwise become effective, the first full day following the day the employee returns to Active Work.

Voluntary Life Insurance benefits will be reduced due to age as indicated on the Policy Schedule. Any other decrease in the employee's Voluntary Life Insurance benefit will take effect on the date of the decrease. An employee's Voluntary Life Insurance will not be increased in excess of the Guaranteed Issue Amount unless he or she satisfies the Evidence of Insurability requirement for such excess amount. The employee will become covered for the excess amount on the later of first day of the month following the date we approve the Evidence of Insurability or as indicated on the Policy Schedule.

| | |
|---|---|
| **Participating Employer: Grace period:** | 31 days |
| **Rate change notice to Participating Employer:** | 60 days |
| **Basic Earnings:** | Regular pay only; no overtime pay. |
| **Initial Rate Period:** | One year from Participating Employer's Effective Date |

## BENEFITS

**Life Insurance Benefits:**

Employee Voluntary Life: $25,000 to $500,000 in $5,000 increments not to exceed five times the employee's basic annual earnings

Family:
Spouse: $10,000 to $100,000 in $5,000 increments not to exceed 50% of the Employee's Insured Amount. Coverage terminates at age 70

Child:
| | |
|---|---|
| 10 days to 6 months: | $1,000 |
| 6 months to age 19, or up To age 25 if a full time student: | $10,000 or $20,000 as elected |

You and your dependents (if applicable) are covered for the amount of insurance for which you have enrolled, the required premiums is being paid and, if in excess of the Guaranteed Issue Amount, has been approved by Reliance Standard Life Insurance Company.

**Guaranteed Issue Amount:**
**Employee Guaranteed Issue Amount:**
Employees who were participating in and insured by the Participating Employer's prior plan on the date immediately prior to the Participating Employer's Effective Date shown on the Policy Schedule and are Actively at Work on such date: All amounts that were in force under the Participating Employer's prior plan on the date immediately preceding the Participating Employer's Effective Date with Reliance Standard Life Insurance Company are guaranteed issue up to the maximum benefit amount available under this Policy.

Insured's adding Voluntary Life for the first time or Insured's who were not employees of the Participating Employer's on the Participating Employer's Effective Date with Reliance Standard Life Insurance Company:

| | |
|---|---|
| Employees Less than age 60: | $200,000 |
| Employees age 60 but less than age 65: | $25,000 |
| Age 65 & over: | No Guarantee Issue |

**Family Guaranteed Issue Amount:**
Spouse and Children who were participating in and insured by the Participating Employer's prior plan on the date immediately prior to the Participating Employer's Effective Date shown on the Policy Schedule and are not hospital confined on such date: All amounts that were in force under the Participating Employer's prior plan on the date immediately preceding the Participating Employer's Effective Date with Reliance Standard Life Insurance Company are guaranteed issue up to the maximum benefit amount available under this Policy.

Spouse and Children added for Voluntary Life for the first time on Insured's who were not Insured Spouse and Chidlren under the Participating Employer's plan on the Participating Employer's Effective Date with Reliance Standard Life Insurance Company:

**Spouse:**
| | |
|---|---|
| Less than age 60: | $25,000 |
| Age 60 but less than age 70: | None |
| Spouse Coverage terminates at age 70 | |

**Children:**
| | |
|---|---|
| 10 days to 6 months: | $1,000 |
| 6 months to age 19 (25 full time student): | $10,000 or $20,000 |

**Waiver Benefit:**
| | |
|---|---|
| Benefit applies: | Life<br>Yes |
| Age by which Disability must begin: | 60 |
| Age on which Benefit Terminates: | 65 |

**Other Benefits:**
| | |
|---|---|
| Lay-off or Leave | 90 days |
| Injury or Illness | 6 months |

**LIMITATIONS:**

**Suicide:** No Life Insurance benefits will be payable under the policy for death caused by suicide or self-destruction, or any attempt at it within 24 months after the person's coverage under the policy became effective.

**Reduction Schedule:** Benefits will be reduced as follows:

50% at age 70

LRS-9389-0107                             5

## POLICY EFFECTIVE AND TERMINATION DATES

**Policy Effective Date.** The Policy takes effect at 12:01 a.m. at the address of the Contract Holder on the Policyholder Effective Date indicated on the Policy Schedule.

**Policy Termination by us.** We may terminate the policy on any premium due date on or after the Initial Rate Period through which premium rates have been guaranteed, as indicated on the Policy Schedule. We may not terminate the policy prior to such period, except for non-payment of premium.

We will provide 31 days advance written notice of its intent to terminate by mail or personal delivery. Termination will take effect at 11:59 p.m. at the Contract Holder's address on the date of termination.

**Policy Termination by the Contract Holder.** The Contract Holder may terminate the policy by mailing or delivering to us written notice at least 31 days in advance of the termination date. Termination will take effect at 11:59 p.m. at the Contract Holder's address on the termination date specified in such notice.

**Policy Termination by Both Parties.** The policy may be terminated at any time by the mutual written consent of the Contract Holder and us.

## PARTICIPATING EMPLOYER EFFECTIVE AND TERMINATION DATES

**Participating Employer Effective Date.** The Participating Employer's coverage under the policy takes effect at 12:01 a.m. on the Participating Employer Effective Date indicated on the Policy Schedule.

**Coverage Termination by us.** We may terminate the Participating Employer's coverage on any premium due date on or after the Initial Rate Period through which premium rates have been guaranteed, as indicated on the Policy Schedule. We may not terminate coverage prior to such period, except for non-payment of premium.

We will provide 31 days advance written notice of its intent to terminate by mail or personal delivery. Termination will take effect at 11:59 p.m. at Contract Holder's address on the date of termination.

**Coverage Termination by the Participating Employer.** The Participating Employer may terminate coverage under the policy by mailing or delivering to us written notice at least 31 days in advance of the termination date. Termination will take effect at 11:59 p.m. at the Contract Holder's address on the termination date specified in such notice.

**Coverage Termination by Both Parties.** Coverage under the policy may be terminated at any time by the mutual written consent of the Participating Employer and us.

**Coverage Termination for Non-Payment of Premium.** If any premium is not paid by the end of the grace period specified in the Policy Schedule, coverage under the policy will automatically terminate as of the date on which the unpaid premium was due.

## GENERAL DEFINITIONS

**Accident** means a sudden, unexpected and unintended incident that occurs while coverage is in force with respect to the person whose Injury is the basis of the claim and that results in Injury or loss covered by this policy.

**Active Work/Actively At Work** means expending time and energy in the performance of regular duties for the Participating Employer at the usual place of employment, or at a location to which the Participating Employer requires the Insured to travel and for which the Insured is receiving Basic Earnings for such duties. An Insured will be considered Actively At Work on each regularly scheduled non-work day if he or she was Actively At Work on the immediately preceding scheduled work day.

**Basic Earnings** means the Insured Person's basic rate of pay. It does not include overtime, bonus or any other form of additional compensation, unless otherwise indicated on the Policy Schedule.

**Evidence of Insurability** means a written statement, application, or medical evidence of good health that, in our sole judgment, qualifies the person for coverage under the policy. We may require the person to pay the cost of providing this information.

**Guaranteed Issue Amount** means the highest amount of insurance that will be issued to a person without Evidence of Insurability. This amount is indicated on the Policy Schedule.

**Injury** means a bodily injury caused by an accident occurring while the policy is in force with respect to the person whose injury is the basis of claim and resulting directly and independently of all other causes in a covered loss.

**Insured** means a person who is a member of an Eligible Class, as defined on the Policy Schedule, for whom any required premium has been paid; coverage has been elected, any required Evidence of Insurability is approved by us, and for whom coverage is in force. Persons belonging to more than one Eligible Class will only be covered under the policy for one Eligible Class.

**Physician** means a licensed practitioner of the healing arts acting within the scope of his or her license, who is not: (a) the Insured Person; (b) an relative to the Insured or a relative of any member of the Insured's family; or (c) residing with the Insured Person.

**Sickness** means a diagnosed illness, disease or pregnancy.

## VOLUNTARY LIFE INSURANCE

**Employee's Coverage Effective Date.** An employee's Voluntary Life Insurance benefit that is less than or equal to the Guaranteed Issue Amount begins on the latest of the following:

1. the Participating Employer Effective Date, if the employee is a member of an Eligible Class and applies for insurance prior to such date;
2. the first day of the month following the date the employee applies for insurance, if such date is within 31 days of his or her eligibility date;
3. the first day of the month following the date we approve the employee's Evidence of Insurability, if application is made more than 31 days after his or her eligibility date; or
4. as indicated on the Policy Schedule.

Any Voluntary Life Insurance benefit that is in excess of the Guaranteed Issue Amount will become effective on the first day of the month following the date we approve the Evidence of Insurability.

If the employee is not Actively at Work due to an Injury or Sickness on the date his or her insurance would otherwise become effective, insurance will not be effective until the first full day following the day the employee returns to Active Work.

If the Insured is confined for medical care or treatment in an institution or at home on the date his or her insurance would otherwise become effective, insurance will not become effective until the first full day following the day he or she is given final medical discharge from such confinement.

No Voluntary Life Insurance benefit will be effective until the required premium is paid.

**Death Benefit.** Upon receipt of due proof of death, we will pay the Voluntary Life Insurance benefit that was in force on the employee's life at the time of his or her death, in accordance with the terms of the policy.

**Changes in Amounts of Insurance.** Any increase in the amount of an employee's Voluntary Life Insurance benefit will take effect on the latest of the following:

1. the date of such increase, if the employee is Actively at Work on such date;
2. if the employee was not Actively at Work on the date the increase would otherwise become effective, the first full day following the day the employee returns to Active Work; or
3. as indicated on the Policy Schedule.

Voluntary Life Insurance benefits will be reduced due to age as indicated on the Policy Schedule. Any other decrease in the employee's Voluntary Life Insurance benefit will take effect on the date of the decrease. An employee's Voluntary Life Insurance will not be increased in excess of the Guaranteed Issue Amount unless he or she satisfies the Evidence of Insurability requirement for such excess amount. The employee will become covered for the excess amount on the later of first day of the month following the date we approve the Evidence of Insurability or as indicated on the Policy Schedule.

**Employee's Coverage Termination Date.** Subject to the section titled "Exceptions to When Coverage Ends", an employee's Voluntary Life Insurance ends on the earliest of the following:

1. the date the employee's employment terminates unless contributions for coverage were made in advance, in which case coverage will terminate at the end of the period for which premiums have been paid;
2. the date the Insured is no longer Actively at Work unless contributions for coverage were made in advance, in which case coverage will terminate at the end of the period for which premiums have been paid;
3. the premium due date, if premium for Voluntary Life Insurance remains unpaid at the end of the grace period unless contributions for coverage were made in advance, in which case coverage will terminate at the end of the period for which premiums have been paid;
4. the date the employee ceases to be a member of an Eligible Class;

5.   the date the policy terminates;
6.   the date Voluntary Life Insurance is no longer provided by the Participating Employer;
7.   the date the Insured enters the military, naval or air force of any country or international organization on a full-time active duty basis. This does not apply in the case of scheduled drills or other training not exceeding one month in any calendar year; or
8.   the date the Participating Employer's coverage under the policy ends..

## FAMILY LIFE INSURANCE

**Additional Definitions.** In addition to the definitions provided in the section titled "Definitions", the following terms are defined as indicated:

"Health Care Facility" means general and specialized hospitals, including tuberculosis, psychiatric, long term care and other types of hospitals, and related facilities, such as skilled nursing facilities; intermediate care facilities; rehabilitation centers; alcohol and drug facilities; hospices; facilities for the terminally ill; and facilities for the developmentally disabled.

"Insured Child(ren)" means an Insured's unmarried child, including natural, step, foster, or legally adopted (including in-process adoptions) who resides with the Insured, or is dependent upon the Insured for the majority of support, and for whom application has been made and premium is paid. The child(ren) must meet the age requirements set forth in the Policy Schedule.

"Insured Spouse" means the Insured's lawful spouse by marriage or common law, not including a spouse who is legally separated from the Insured or Widowed by the Insured, for whom application is made and premium is paid.

**Family Coverage Effective Date.** An Insured may apply for Family Life Insurance Benefits for his or her spouse, less than age 70 at the time of application, or child. Subject to the provision titled Good Health Requirement, such benefit that is less than or equal to the Guaranteed Issue Amount begins on the latest of the following:

1. the Participating Employer Effective Date, if the Insured applies for Family Life Insurance prior to such date;
2. the Insured's Effective Date if application for Family Life Insurance is made within 31 days of the Insured's eligibility date;
3. the first day of the month following the date we approve the application for Family Life Insurance, subject to proof of Evidence of Insurability, if application is made more than 31 days after the Insured's eligibility date;
4. the first day of the month following the date we approve the application for Family Life Insurance, if application is made within 31 days of the Insured acquiring a new spouse or child;
5. the first day of the month following the date we approve the application for Family Life Insurance, subject to proof of Evidence of Insurability, if application is made more than 31 days after acquiring a new spouse or child; or
6. as indicated on the Policy Schedule.

Any Family Life Insurance benefit that is in excess of the Guaranteed Issue Amount will become effective on the first day of the month following the date we approve the required Evidence of Insurability.

No Family Life Insurance benefit will be effective until the required premium is paid.

If Family Life Insurance has been elected by the Insured for his or her children and such Insured subsequently acquires an additional child(ren), coverage will be immediately effective for such child(ren), subject to the provision titled Good Health Requirement.

**Death Benefit.** Upon receipt of due proof of death, we will pay the Family Life Insurance benefit that was in force on the Insured Spouse's or Insured Child's life at the time of his or her death, in accordance with the terms of the policy.

**Changes in Amounts of Insurance.** Subject to the provision titled Good Health Requirement, any increase in Family Life Insurance benefits will take effect on the later of the date of such increase or as indicated on the Policy Schedule.

Family Life Insurance benefits will be reduced due to age as indicated on the Policy Schedule. Any other decrease in Family Life Insurance benefits will take effect on the date of the decrease.

LRS-9389-0107                    10

**Good Health Requirement.** If the Insured's spouse or child is confined in a Health Care Facility on the date Family Life Insurance would otherwise become effective, such insurance will not be effective until the first day of the month following the day that confinement ends.

**Dual Coverage Prohibitions:**

1.   Spouse. If a person is eligible for coverage under the policy both as a Insured Spouse and as an Insured, such person may only be covered as an Insured.
2.   Child. If each parent of an Insured Child is an Insured under the policy, such child may only be covered by one parent. If the Insured who is covering the Insured Child loses his or her coverage under the policy, the other Insured may elect to continue covering the Insured Child without Evidence of Insurability by applying to cover the Insured Child within 31 days of the loss of the other Insured's coverage.

**Family Life Insurance Termination Date.** Subject to the section titled "Exceptions to When Coverage Ends", an Insured Spouse's or Insured Child's Life Insurance ends on the earliest of the following:

1.   the date the Insured's coverage under the policy ends;
2.   the date the Participating Employer coverage under the policy ends;
3.   the date the Insured is no longer eligible for Family Life Insurance;
4.   the date the Insured notifies us in writing to discontinue his or her Family Life Insurance;
5.   the premium due date, if premium for Family Life Insurance remains unpaid at the end of the grace period;
6.   the date Family Life Insurance is no longer provided by the policy;
7.   the date the Insured Spouse or Insured Child ceases to qualify for coverage under the policy
8.   the date the Insured Spouse or Insured Child enters the military, naval or air force of any country or international organization on a full-time active duty basis. This does not apply in the case of scheduled drills or other training not exceeding one month in any calendar year;or
9.   for Insured Spouse coverage only, the date the Insured Spouse attains age 70.

**Family Conversion Right.** In addition to the reasons stated in the section titled "CONVERSION", an Insured Spouse or Insured Child is also Entitled to Convert his or her Family Life Insurance if:

1.   the Insured dies; or
2.   the spouse or child ceases to qualify for coverage as an Insured Spouse or Insured Child.

The amount of converted Life Insurance to which such spouse or child will be entitled is limited to the amount of Life Insurance that is lost under the policy.

## EXCEPTIONS TO WHEN COVERAGE TERMINATES

The following provisions allow coverage to continue beyond the date it would otherwise terminate.

**Extension for Lay-off or Leave of Absence.**  If an Insured is not Actively at Work due to Lay-off or Leave of Absence, the Participating Employer may extend the Insured's benefits under the policy, including Family Life Insurance, up to the maximum period indicated on the Policy Schedule.  Such extension is subject to continued payment of the required premium and Participating Employer established criteria that precludes individual selection.

**Extension for Injury or Illness.**  If an Insured is not Actively at Work due to Injury or Sickness, the Participating Employer may extend the Insured's benefits under the policy, including Family Life Insurance, up to the maximum period indicated on the Policy Schedule.  Such extension is subject to continued payment of the required premium and Participating Employer established criteria that precludes individual selection.

**Extension for Total Disability with Waiver of Premium.**  If an Insured is not Actively at Work due to Total Disability, the Insured's benefits eligible for Waiver of Premium, as indicated on the policy Schedule, may be extended by us without payment of the required premium, subject to the following:

1. Total Disability must have begun before the age indicated on the Policy Schedule and while covered under the policy;
2. the Insured furnishes proof satisfactory to us that he or she has been Totally Disabled continuously from the date the Total Disability began;
3. such proof is furnished no later than one year after the date the Insured ceased being Actively at Work, unless the Insured demonstrates proof was provided as soon as reasonably possible; and
4. the Insured must surrender to us, without claim for more than a refund of premium paid, any policy issued to him or her pursuant to the Conversion Privilege provided by the policy.

So long as an Insured furnishes proof that the Total Disability has continued uninterrupted, we will continue to extend such Insured's Life Insurance benefits from the date the Total Disability began until the earliest of the following:

1. the end of the maximum period indicated on the Policy Schedule;
2. the date the Insured is no longer Totally Disabled; or
3. the date the Insured receives, or would be eligible to receive if a claim was made, any retirement benefits, including Social Security or Railroad Retirement Act benefits.

To verify the existence and continuance of Total Disability, we have the right and opportunity, at its own expense, to have the Insured examined by a Physician chosen by us, as often as is reasonable.  Failure to comply with this requirement will result in termination of Extension for Total Disability with Waiver of Premium.

Any premium paid for an Insured during a period for which he or she was entitled to Extension for Total Disability with Waiver of Premium will be refunded to the Participating Employer who is responsible for distribution to the Insured, if applicable.

The Life Insurance benefit that is extended under this provision will be the benefit to which the Insured was entitled on the last day the Insured was Actively at Work.  This benefit will not increase; however, it will decrease whenever the benefit applicable to the Insured's Eligible Class is reduced, or whenever any benefit reduction applies.

Termination of the policy will not end extension of Life Insurance benefits under this provision.

Should Total Disability end, thereby allowing the Insured to return to Active Work, the Insured may resume any coverage provided under the policy for which the Insured qualifies, provided the policy has not terminated and the required premium is paid.

No Life Insurance benefit will be paid while coverage is extended under this provision without proof that the Insured continued to be Totally Disabled through the period of extension until the date of death.

As used in this provision, the following terms are defined as indicated:

"Total Disability/Totally Disabled" means:

1.      the Insured is unable to perform the Primary and Essential Duties of any occupation for which the Insured is, or becomes, reasonably fitted by training, education, and experience; and

2.      the Insured is not working in any capacity for pay or remuneration.

"Primary and Essential Duties" means those duties that are generally and regularly required in the performance of the occupation and that cannot be reasonably be changed, accommodated, or omitted.

**Extension of Family Life Insurance during the Insured's Extension for Total Disability with Waiver of Premium.** If an Insured's insurance is continued under the Extension for Total Disability with Waiver of Premium exception the life insurance on the lives of his or her covered dependents will also be continued during the same period without payment of premiums subject to all other provisions and conditions of the Group Policy.

**Continuation of Coverage.** If an Insured ceases to be employed by the Participating Employer  for any reason other than retirement, the Insured may elect to continue his or her Life Insurance benefits and the Life Insurance Benefits for his or her Spouse and/or any Dependents then covered under the policy provided he or she has not attained age 70.  The Insured must make such election within 31 days of termination of employment.

Continued coverage will be subject to all of the provisions and limitations of the policy, including reductions/termination at an age or any other termination provision.  However, in no event will coverage continue beyond age 70.

Coverage continued under this provision will end the earliest of the date:

1.      ending the last period through which premiums have been paid, subject to the provision titled "*Premium for Continuation*";
2.      the Insured's Life Insurance benefits would otherwise terminate as indicated in the policy;
3.      the Participating Employer's coverage under the Policy terminates; or
4.      the Insured Person becomes eligible for any other group term life coverage through employment.

*Premium for Continuation.*  The Insured is responsible for paying the entire premium for coverage continued under this section.  Premiums for continued coverage will be billed directly to the Insured on a quarterly, semi-annual or annual basis.  Such premiums may exceed the group rate applicable to the amount of coverage being continued.   After the first premium for coverage under this section has been paid, a grace period of 31 days will be granted to the Insured for payment of each subsequent premium due.  During such grace period, coverage will continue in force.

**Conversion After Extension.**  When the periods of extension or continued coverage described in this section ends, the Insured may convert his or her coverage to an individual insurance policy, provided the Insured is Entitled to Convert as described in the Conversion Privilege provision.

## CONVERSION

**Conversion Privilege.** Any person covered under the policy may convert his or her Life Insurance to an individual policy, provided such person is Entitled to Convert and, within 31 days after his or her Life Insurance ends:

1.      applies in writing to us; and
2.      pays the first premium.

**Evidence of Insurability.** No Evidence of Insurability will be required in order to convert to an individual policy under the Conversion Privilege.

**Entitled to Convert.** A person covered under the policy is Entitled to Convert his or her Life Insurance only if such insurance ends because:

1.      the Insured's employment terminates;
2.      the Insured ceases to be a member of an Eligible Class as described in the Eligible Class(es) section of the Policy Schedule;
3.      the policy terminates, provided the person has been covered under the policy for at least five consecutive years immediately preceding such termination;
4.      the policy is amended to terminate the Eligible Class to which the Insured belongs, provided the person seeking to convert has been covered under the policy for at least five consecutive years immediately preceding such termination.

**Amount of Converted Life Insurance.** If a person's Life Insurance ends because the Insured's employment terminates or the Insured is no longer a member of an Eligible Class, the amount of converted Life Insurance to which he or she will be entitled will not be more than the amount of Life Insurance that is lost under the policy reduced by the amount of any group life insurance for which he or she becomes eligible during the 31 days following the date the person's life insurance under the policy ends.

If a person's Life Insurance ends because the Policy is changed to terminate the Eligible Class to which the Insured belongs, or if the policy terminates, the amount of converted Life Insurance he or she will be entitled to convert will be the lesser of: (a) the amount of Life Insurance in force under the policy at the time insurance ends, less any amount for which such person becomes eligible under this or any other group life policy during the 31-day conversion period; or (b) $10,000.

**Type of Policy.** The individual policy will be our current offering and will be on a form customarily issued by us. However, such policy may not be term insurance. No disability or other supplemental benefits will be provided under the individual policy. The individual policy will go into effect at the end of the 31-day period after Life Insurance ends.

If the individual policy contains a provision that restricts the time within which benefits would be payable as a result of suicide, or restricts the time within which coverage under the policy can be contested, such time periods will be deemed to have begun at the time the Insured was first covered under the policy.

The premium will be based on our rates for the individual policy form, the benefit amount, age and the class of risk to which the person belongs at the time insurance ends. To continue insurance under the individual policy, the premium must continue to be paid as required under the terms of the individual policy.

**Death During the Conversion Period.** If the person dies during the 31-day period during which he or she is eligible to convert, we will pay, as a death benefit under the policy, the maximum amount such person was otherwise eligible to convert. If the person dies during the 31-day conversion period and has already converted, the death benefit payable under the policy will be reduced by the amount of Life Insurance actually converted, unless the individual policy is surrendered to us. In such case, any premium paid for the individual policy will be refunded.

LRS-9389-0107                                   14

**Notice of Conversion Right.**  Notice of the right to convert to an individual policy will be presented to the Insured or delivered to the Insured's last known address within 15 days from the date a person's Life Insurance coverage ends.  If notice is not given within this 15-day period, the 31-day conversion period will be extended by 15 days after the date notice is given.  However, in no event will the initial 31-day period of time be extended beyond 60 days from the date Life Insurance ends.

**Restoration of Membership in Eligible Class.**  If an Insured has converted coverage under the policy and subsequently regains membership in an Eligible Class, coverage will not be provided under the policy until such Insured surrenders the individual policy to us, subject to the provision titled "Reinstatement of a Previous Insured."

## CLAIMS PROVISIONS

**Notice of Claim.** Written notice of claim must be given to us within 20 days after a loss, or as soon thereafter as reasonably possible.  Notice given by or on behalf of the claimant to us with information sufficient to identify the Insured, is deemed notice to us.

**Claim Forms.**  We will send claim forms to the claimant upon receipt of a written notice of claim.  If such forms are not sent within 15 days after the giving of notice, the claimant will be deemed to have met the proof of loss requirements upon submitting, within the time fixed in the policy for filing proof of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made. The notice should include the Insured's name, the Participating Employer and the Policy Number.

**Proof of Loss.**  Written proof of loss must be furnished to us within 90 days of the after the date of loss. If the loss is one for which the policy requires continuing eligibility for periodic benefit payments, subsequent written proofs of eligibility must be furnished at such intervals as we may reasonably require. Failure to furnish such proof within the time required, will not reduce or deny any benefits if the proof is given as soon as reasonably possible.  However, in no event, other than legal incapacity, will proof be given more than one year after the date of loss.

**Payment of Claims.**  Upon receipt of due written proof of death, payment for loss of life of an Insured will be made to the Insured's beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

Upon receipt of due written proof of loss, payments for all losses, except the Insured's loss of life, will be made to (or on behalf of, if applicable) the Insured.  If an Insured dies before all payments due have been made, the amount still payable will be paid to his or her beneficiary as described in the Beneficiary Designation and Change provision of the General Provisions section.

If any payee is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the payee's property.  If the payee has no legal guardian for his or her property, a payment not exceeding $1,000 may be made, at our option, to any relative by blood or connection by marriage of the payee, who, in our opinion, has assumed the custody and support of the minor or responsibility for the incompetent person's affairs.

Any payment we make in good faith fully discharges our liability to the extent of the payment made.

**Time of Payment of Claims.** Benefits payable under the policy for any loss other than loss for which the policy provides any periodic payment will be paid immediately upon our receipt of due written proof of the loss.  Subject to our receipt of due written proof of loss, all accrued benefits for loss for which the policy provides periodic payment will be paid at the expiration of each month during the continuance of the period for which we are liable and any balance remaining unpaid upon termination of liability will be paid immediately upon receipt of such proof.

## GENERAL PROVISIONS

**Incontestability.** The validity of the policy will not be contested after it has been in force for two years from the Policy Effective Date, except for non-payment of premium.

The validity of a Participating Employer's coverage under the policy will not be contested after such coverage has been in force for two years from the Participating Employer's Effective Date, except for non-payment of premium.

After a person has been covered under the policy for two years, no statement made by such person will be used to contest a claim under the policy. We can only contest coverage if the misstatement is made in a written instrument signed by such person and a copy is given to the Participating Employer, the signor or the signor's beneficiary.

**Beneficiary Designation and Change.** The Insured's designated beneficiary(ies) is (are) the person(s) named by the Insured, as shown in the Participating Employer records (as applicable). The Insured Spouse's and Insured Child's beneficiary is the Insured.

A legally competent Insured over the age of majority may change his or her beneficiary designation at any time, unless an irrevocable designation has been made. The change may be executed, without the consent of the designated beneficiary(ies), by providing us, or, if agreed upon in advance by us, the Participating Employer, with a written request for change. When the request is received, whether the Insured is then living or not, the change of beneficiary will relate back to and take effect as of the date of execution of the written request, but without prejudice to us on account of any payment that is made prior to receipt of the request.

If there is no designated beneficiary, or if no designated beneficiary is living after the Insured's death, the benefits will be paid, in equal shares, to the survivors in the first surviving class of those that follow: The Insured's (1) spouse; (2) children; (3) parents; or (4) brothers and sisters. If no class has a survivor, the beneficiary is the Insured's estate.

If the Insured is not living on the date of the Insured Spouse's or Insured Child's death, the beneficiary is the Insured's estate.

**Reinstatement of a Previous Insured.** A member of an Eligible Class who was previously an Insured may apply for any benefits for which the member is eligible. Such member's benefits will begin on the first day of the month following the date we approve the member's application for such benefits, as well as Evidence of Insurability.

**Physical Examination and Autopsy.** We at our own expense have the right and opportunity to examine the Insured whose loss is the basis of claim under the policy as often as we may reasonably require during the pendency of the claim, and to make an autopsy in case of death where it is not forbidden by law. If the Insured is Totally Disabled, we may not examine the Insured more than once a year after he or she has been Totally Disabled.

**Legal Actions.** No action at law or in equity will be brought to recover on the policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of the policy. No such action will be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Workers' Compensation.** The policy is not in lieu of and does not affect any requirements for coverage by any Workers' Compensation Act or similar law.

LRS-9389-0107                               17

**Clerical Error.** A purely clerical error, that arises from other than a failure to perform administrative duties hereunder, whether by the Participating Employer or us, will not void the insurance of any Insured if that insurance would otherwise have been in effect; nor will it extend insurance of such person if that insurance would otherwise have ended or been reduced as provided by the policy. Clerical error may be, by illustration but not limitation, errors in transcription or computation, but is not, by illustration but not limitation, a failure to advise Insureds of procedural requirements.

**Assignment.** The policy is non-assignable. An Insured may not assign his or her rights, privileges and benefits under the Policy.

**Misstatement of Facts.** If the material facts, including age of the Insured, were not accurate in the Application or any application for coverage under the policy:

1.   a fair adjustment of premium will be made; and
2.   the true facts, including true age, will decide whether, and in what amount, insurance is in force under the policy.

**Facility of Payment.** If an individual appears to us to be equitably entitled to compensation because he or she has incurred expenses on behalf of an Insured or for burial or funeral expenses, we may deduct from the amount payable under the policy to be paid to such individual the expenses incurred, but not more than $500. Such payment will not exceed the amount due under the policy.

**Settlement Options.** The Insured may elect to have all or any part of his or her insurance for loss of life paid to his or her beneficiary in installments or in any other way that may be agreed to by us. The Insured must give notice in writing to elect a settlement option. The Insured will have the right to change the election at any time. The terms of payment will be in accordance with those offered by us for the insurance at the time election is made.

After the Insured's death, the beneficiary:

1.   may make such an election, if the Insured had not done so; and
2.   may name a person(s) to receive any amount that would otherwise go to the beneficiary's estate; and
3.   will have the right to change the person(s) named in accordance with 2. above.

# RELIANCE STANDARD
## LIFE INSURANCE COMPANY

Home Office: Schaumburg, Illinois • Administrative Office: Philadelphia, Pennsylvania

### ACCELERATED DEATH BENEFIT RIDER

This rider amends the policy or Certificate of Insurance to which it is attached, and takes effect on the Policy Effective Date. THE COST OF THIS BENEFIT IS INCLUDED IN THE COST OF THE POLICY.

The following provision is hereby added to the policy or Certificate of Insurance to which this rider is attached:

**Death benefits will be reduced if an acceleration-of-life-insurance benefit is paid.**

**The acceleration-of-life-insurance benefits offered under this rider may or may not qualify for favorable tax treatment under the Internal Revenue Code of 1986. Whether such benefits qualify depends on factors such as your life expectancy at the time benefits are accelerated or whether you use the benefits to pay for necessary long-term care expenses, such as nursing home care. If the acceleration-of-life-insurance benefits qualify for favorable tax treatment, the benefits will be excludable from your income and not subject to federal taxation. Tax laws relating to acceleration-of-life-insurance benefits are complex. You are advised to consult with a qualified tax advisor about circumstances under which you could receive acceleration-of-life-insurance benefits excludable from income under federal law.**

**Receipt of acceleration-of-life-insurance benefits may affect your, your spouse or your family's eligibility for public assistance (Medicaid), Aid to Families with Dependent Children (AFDC), supplemental social security income (SSI), and drug assistance programs. You are advised to consult with a qualified tax advisor and with social service agencies concerning how receipt of such a payment will affect you, your spouse and your family's eligibility for public assistance.**

**ACCELERATED DEATH BENEFIT:** This benefit is payable to an Insured if, due to a medically determinable condition suffered by the Insured, death is expected to result within 12 months.

In order for this benefit to be paid, we:

1.   must receive a written request from the Insured. If the Insured is unable to sign a written request due to his physical condition, a written request from the primary beneficiary will be acceptable;

2.   must receive a written report signed by the licensed attending physician who certifies that the Insured, due to a medically determinable condition, has a life expectancy of 12 months or less;

3.   must receive from any assignee or irrevocable beneficiary his acknowledgement and agreement to payment of this benefit;

4.   may, at our option, confirm the diagnosis with an additional medical opinion if our medical director does not concur with the attending physician. Such opinion will be obtained at our expense. If after reexamination the diagnoses still conflict, the request to accelerate life insurance benefits under the policy will be denied.

LRS-9392-0107

The Accelerated Death Benefit will be an amount equal to 50% of the death benefit applicable to the Insured under the policy on the date of the physician's certification of such diagnosis, not to exceed $100,000. The benefit payable will be rounded, if necessary, to the nearest multiple of $1,000. This benefit will be paid in one lump sum and is payable only one time for each Insured. If the Insured recovers from the medically determinable condition after receiving the Accelerated Death Benefit, we will not ask for a refund. However, should the Insured return to active work, the amount of life insurance to which he or she is entitled will be reduced by the amount previously paid.

If an Insured elects to receive this benefit, it is understood:

1.    the death benefit ultimately payable for the Insured will be reduced by an amount equal to the Accelerated Death Benefit paid to the Insured;

2.    the amount of this Accelerated Death Benefit plus the corresponding death benefit will not exceed the amount that would have been paid as the death benefit in the absence of this Accelerated Death Benefit;

3.    the portion of the death benefit remaining after payment of the Accelerated Death Benefit will be payable upon the death of the Insured; and

4.    the Accelerated Death Benefit and the balance of the death benefit of the policy will constitute full settlement of the face amount of the policy.

Coverage for any Insured under this provision will terminate on the first of the following:

1.    the date coverage under the policy terminates;

2.    the date of payment of an Accelerated Death Benefit to the Insured; or

3.    the end of the period for which the required premium has been paid.

Dependent Eligibility for Accelerated Death Benefit – An Insured Spouse or Insured Child is eligible for an Accelerated Death Benefit, subject to all other terms and conditions of this rider.

Nothing contained in this Amendatory Rider will alter or amend the terms of the policy or Certificate of Insurance except as expressly stated herein. All the terms of the policy that are not in conflict with the terms of this Rider will be applicable. This rider terminates at the same time as the policy or Certificate of Insurance to which it is attached.

Signed for Reliance Standard Life Insurance Company:

**President**

| FACTS | WHAT DOES RELIANCE STANDARD DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number   • Name, address, telephone number<br>• Financial Information   • Health information, including medical history<br>• Date of birth   • Information about your job and salary<br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information, the reasons Reliance Standard chooses to share, and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Reliance Standard share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | YES | NO |
| **For our marketing purposes –** to offer our products and services to you | YES | NO |
| **For joint marketing with other financial companies** | NO | N/A |
| **For our affiliates' everyday business purposes –** Information about your transactions and experiences | YES | NO |
| **For our affiliates' everyday business purposes –** Information about your credit worthiness | NO | N/A |
| **For our affiliates to market to you** | NO | N/A |
| **For our non-affiliates to market to you** | NO | N/A |

**Who we are**

| Who is providing this notice? | Reliance Standard Life Insurance Company, First Reliance Standard Life Insurance Co., Reliance Standard Life Insurance Company of Texas |
|---|---|

**What we do**

| How does Reliance Standard protect my information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. In addition, we have policies and procedures that direct our employees and agents to protect your personal information. We do not share your personal information except as authorized by you or allowed by law. |
|---|---|
| How does Reliance Standard collect my personal information? | We collect your personal information; for example, when you apply for insurance or file a claim. We may collect your personal information from you, your insurance agent or broker, your employer, your medical providers, consumer reporting agencies or anyone you have authorized to provide us with information. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes – information about your credit worthiness.<br>• affiliates from using your information to market to you<br>• sharing for non-affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing |

**Definitions**

| Affiliates | Companies related by common ownership or control  They can be financial and non-financial companies.<br>• Our affiliates include other companies which are part of the Tokio Marine Group |
|---|---|
| Non-Affiliates | Companies not related by common ownership or control. They can be financial and non-financial companies This includes entities which provide claim administration, underwriting, investigation, reinsurance, policyholder or other services to us or on our behalf. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you. Our joint marketing partners include insurance agents and brokers. |

| Questions? | Call 800-351-7500 or go to www.reliancestandard.com |
|---|---|

# HIPAA Notice of Privacy Practices

This notice describes how medical information about you may be used and disclosed and how you can get access to this information.

Please review it carefully. The privacy of your personal and health information is important.

*This requires no action on your part unless you have a request or complaint.*

■ **Bay Bridge Administrator's Pledge Regarding Medical Information**

We understand that medical information about you and your health is personal. We are committed to protecting medical information about you. We create a record of the health care claims reimbursed under the Plan for administration purposes. This notice applies to all of the medical records we maintain.

Both under law, The Health Insurance Portability and Accountability Act (HIPAA) and our policy, Bay Bridge Administrators, LLC (BBA) has a responsibility to protect the privacy of your personal and health information, which is legally known as Protected Health Information (PHI). We:
- protect your privacy by limiting who may see your PHI;
- limit how we may use or disclose your PHI;
- inform you of our legal duties with respect to your PHI;
- explain our privacy policies; and
- strictly adhere to the policies currently in effect.

This notice takes effect on 4/14/2003 and will remain in effect until we replace it and provide you notice of such changes.

■ **BBA's Uses and Disclosures of Plan Member's PHI**

As a Plan member, BBA may use and disclose your PHI, without your consent/authorization, in the following ways:

**Treatment:** We may disclose your PHI to a doctor, a hospital or other entity that asks for it in order for you to receive medical treatment.

**Payment:** We may use and disclose medical information about you to determine eligibility for Plan benefits, to facilitate payment for the treatment and services you receive from health care providers, to determine benefit responsibility under the Plan, or to coordinate Plan coverage. We may also share medical information with a utilization review or precertification service provider. Likewise, we may share medical information with another entity to assist with the adjudication or subrogation of health claims or to another health plan to coordinate benefit payments.

**Health Care Operations:** We may use and disclose medical information about you for Plan operations that are necessary to run the Plan. We may use medical information in connection with: conducting quality assessment and improvement activities, medical review, legal services, audit services, fraud and abuse detection programs; business planning and development, such as cost and business management and other general Plan administrative activities or other activities relating to Plan coverage such as enrollment, changes or disenrollment in Plan.

**Disclosure to Health Plan Sponsor:** Information may be disclosed to another health plan maintained by your employer for purposes of facilitating claims payments under that plan. In addition, medical information may be disclosed to your employer solely for purposes of administering the Plan.

**Disclosure to Business Associates:** We will share your PHI with third party "business associates" that perform various activities for the Plan. Whenever an arrangement between BBA and a business associate involves the use or disclosure of your PHI, BBA will have a written contract that contains terms that will protect the privacy of your PHI.

**Required by Law:** We must use or disclose your PHI when we are required to do so by law. For example, we must disclose your PHI to the U.S. Department of Health and Human Services upon request for purposes of determining whether we are in compliance with federal privacy laws.

**Process and proceedings:** We may disclose your PHI in response to a court or administrative order, subpoena, discovery request, or other lawful process.

**Law Enforcement:** We may disclose limited information to law enforcement officials concerning the PHI of a suspect, fugitive, material witness, crime victim or missing person. We may disclose the PHI of an inmate or other person in lawful custody to a law enforcement official or correctional institution.

**Threat to Health or Safety:** We may use and disclose medical information about you when necessary to prevent a serious threat to your health and safety or the health and safety of the public or another person. Any disclosure, however, would only be to someone able to help prevent the threat.

■ **Authorizing Use and Disclosure of Plan Member's PHI**

BBA will request written authorization from you to use your PHI or to disclose it to anyone for any purpose or situation not included in this document. If you give us an authorization, you may revoke it in writing at any time. Your revocation will not affect any use or disclosures permitted by your authorization while it was in effect. We will not use or disclose your PHI for any reason except those described in this notice without your written authorization.

■ **Individual Rights for All Plan Members**

As a Plan member, the following are your rights concerning your PHI:

**Access:** You have the right to review or obtain copies of your PHI, with certain exceptions. If you request copies, BBA may charge you a fee for each page, and a per hour charge for staff time to locate and copy your PHI, and postage to mail it.

**Disclosure Accounting:** You have the right to request in writing a list of instances in which BBA or our subcontractors disclosed your PHI for purposes other than treatment, payment, health care operations and certain other activities. Your request must state a time period no longer than six years and not before April 14, 2003. If you request this list more than once in a 12-month period, BBA can charge you a fee.

**Amend:** You have the right to request in writing that we amend your PHI if you feel the information we have about you is incorrect or incomplete. You must explain why the information should be amended. We may deny your request if we did not create the information you want amended, in the first place or we do not even maintain or keep the information in question, or the information is in fact accurate and complete.

**Restriction Request:** You have the right to ask us not to use or disclose any part of your PHI for the purposes of treatment, payment or healthcare operations. You may also request that any part of your PHI not be disclosed to family members or friends who may be involved in your care or for notification purposes as described in this Notice of Privacy Practices. Your request must state the specific restriction requested and to whom you want the restriction to apply.

**Alternate Confidential Communications:** We will accommodate reasonable requests. We may also condition this accommodation by asking you for information as to how payment will be handled or specification of an alternative address or other method of contact. We will not request an explanation from you as to the basis for the request. Please make this request in writing to our Privacy Officer.

**If You Have a Complaint:** If you are concerned that BBA may have violated your privacy rights, you may file a complaint. You may also submit a written complaint to the Secretary of the Department of Health and Human Services. BBA will not retaliate in any way if you choose to file a complaint. If you want more information regarding our privacy practices or would like to request a form, you may contact us in the following ways:

- Access us at:
  www.baybridgeadministrators.com
- Bay Bridge Administrators, LLC
  P.O. Box 161690
  Austin, TX 78716
- Phone: (800) 845-7519
- Fax: (512) 329-5463

**Changes to This Notice:** We reserve the right to change this notice. We reserve the right to make the revised or changed notice effective for medical information we already have about you as well as any information we receive in the future. A current copy of this notice will e posted on the BBA website.



Bay Bridge Administrators, LLC
P.O. Box 161690
Austin, TX 78716

ELECTRONICALLY FILED
2020 Aug 25 PM 4:56
CLERK OF THE SALINE COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000139-CO

## IN THE DISTRICT COURT OF SALINE COUNTY, KANSAS

| | |
|---|---|
| **GERALD SHAFT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.  SA-2020-CV-000139-CO** |
| | ) |
| **RELIANCE STANDARD LIFE INS. CO.,** | ) |
| | ) |
| **Defendant.** | ) |

## MOTION

COMES NOW, Plaintiff by and through counsel Norman R. Kelly, Esq., of Norton, Wasserman, Jones & Kelly, L.L.C., and hereby moves this Court for an order removing the case from the stay order issued by Supreme Court Rule 2020-PR-75. In support of this Motion, the Plaintiff shows the Court the following:

1.     That this case of action seeks the recovery of benefits under an insurance policy.

2.     That the Supreme Court under 2020-PR-75 dated June 16, 2020, suspended all deadlines statutorily or otherwise relating to pending cases and those filed after this order.

3.     That judges hearing matters may remove the case from the application of this Order upon motion.

4.     That the Plaintiff respectfully requests the Court re-institute all deadlines in this matter both including Answer, discovery or otherwise.

5.     That there exists no just reason to delay the prosecution of this matter.

WHEREFORE, the Plaintiff prays the Court re-institute the deadlines in this matter and exempt from the applicability of 2020-PR-75, and for such other and further relief as the Court deems fair, just and equitable.

NORTON, WASSERMAN, JONES & KELLY, L.L.C.
213 S. Santa Fe
PO Box 2388
Salina, Kansas 67401-2388
(785) 827-3646
Fax: (785) 827-0538
E-mail: nrk@nwjklaw.com


By: /s/Norman R. Kelly
Norman R. Kelly
SC # 10639
Attorneys for Plaintiff

2

Gerald Shaft

vs.

Reliance Standard Life Ins Co

**ELECTRONICALLY FILED**
2020 Aug 12 PM 1:24
CLERK OF THE SALINE COUNTY DISTRICT COURT
CASE NUMBER:  2020-CV-000139-CO

**SUMMONS**

## Chapter 60 - Service by Attorney or Process Server

To the above-named Defendant/Respondent:

> **Reliance Standard Life Ins Co**
> **Two Commerce Square**
> **2001 Market St., Suite 1500**
> **Philadelphia, PA  19103**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

> Norman R. Kelly
> 213 S. Santa Fe
> Salina, KS 67401

within 21 days after service of summons on you.



Clerk of the District Court
Electronically signed  on 08/12/2020 02:14:58 PM

**Documents to be served with the Summons:**
Petition, Exhibit "A"

ELECTRONICALLY FILED
2020 Aug 26 AM 8:57
CLERK OF THE SALINE COUNTY DISTRICT COURT
CASE NUMBER: 2020-CV-000139-CO



**Court:** Saline County District Court

**Case Number:** 2020-CV-000139-CO

**Case Title:** Gerald Shaft vs. Reliance Standard Life Ins Co

**Type:** Order

SO ORDERED.

/s/ Paul J. Hickman, Honorable District Court Judge

Electronically signed on 2020-08-26 08:57:16     page 1 of 3

**IN THE DISTRICT COURT OF SALINE COUNTY, KANSAS**

| | |
|---|---|
| **GERALD SHAFT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.   SA-2020-CV-000139-CO** |
| | ) |
| **RELIANCE STANDARD LIFE INS.** | ) |
| **CO.,** | ) |
| | ) |
| **Defendant.** | |

## <u>ORDER</u>

NOW ON THIS _____ day of August, 2020, the above captioned case comes before the Court on the Application of the Plaintiff to re-institute deadlines in this matter.

WHEREUPON, the Court after reviewing the Petition and the Motion finds that the deadlines in this matter shall be re-instituted upon the filing of this Order.

IT IS THEREFORE BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that this case shall be exempted from 2020-PR-75 and any other current orders suspending any deadlines in this matter whether statutorily or otherwise.

IT IS SO ORDERED.

 

           THIS ORDER IS EFFECTIVE AS OF
           THE DATE AND TIME SHOWN ON
           THE ELECTRONIC FILE STAMP BY
           PAUL J. HICKMAN
           DISTRICT COURT JUDGE

SUBMITTED BY:

NORTON, WASSERMAN, JONES & KELLY, L.L.C.
213 S. Santa Fe
PO Box 2388
Salina, Kansas 67402-2388
(785) 827-3646
Fax: (785) 827-0538
E-mail: nrk@nwjklaw.com


By: /s/Norman R. Kelly
Norman R. Kelly
SC # 10639
Attorneys for Plaintiff

2